IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NIR MASOK,                                    )
                                              )
                    Petitioner,               )
                                              )
        v.                                    )
                                              )    Case No. 04 C 7503
DEBORAH ACHIM, the Field Office               )
Director for the Chicago District Office      )
of the Department of Homeland Security,[1]    )
                                              )
                    Respondent.               )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Petitioner Nir Masok's petition for writ of habeas corpus pursuant to

28 U.S.C. § 2241. At issue is whether Masok's Illinois conviction for the possession of a

controlled substance constitutes a "drug trafficking crime" under the Controlled Substances Act

("CSA"), and thus, is an "aggravated felony" under the Immigration and Nationality Act

("INA"). For the following reasons, the Court grants Masok's petition for habeas corpus.

## BACKGROUND

In 1982, Masok, a native and citizen of Israel, entered the United States as a non-

immigrant. (Certified Admin. Record, at 057). Masok obtained permanent resident status on or

about September 10, 1987. (*Id.*) On April 29, 1996, Masok pleaded guilty to the charge of

possession of a controlled substance, less than 15 grams of cocaine, in violation of 720 ILCS

---

[1] The proper Respondent to this habeas petition is the person responsible for maintaining
the custody of Petitioner, in this instance, the Field Office Director for the Chicago District
Office of the Department of Homeland Security, Deborah Achim. *See* 28 U.S.C. § 2243;
*Rumsfeld v. Padilla,* ___U.S. ___124 S.Ct. 2711, 2720, 159 L.Ed.2d 513 (2004); *al-Marri v.
Rumsfeld,* 360 F.3d 707, 711 (7th Cir. 2004). Thus, the Court substitutes Achim as Respondent.

570/402(c), in the Circuit Court of Cook County, Illinois. (*Id.* at 111-14.) The Illinois court sentenced Masok to two years probation. (*Id.* at 111.) On August 29, 1996, Masok was convicted of possession of marijuana in the Superior Court of Lowndes County, Georgia. (*Id.* at 080, 103-09.) The Georgia court sentenced him to four years of probation. (*Id.*) On January 5, 1998, the Circuit Court of Cook County revoked Masok's probation and sentenced him to serve one year in the Illinois Department of Corrections. (*Id.* at 111.)

On February 20, 1998, the Immigration and Naturalization Service ("INS"), now the Department of Homeland Security, Immigration and Customs Enforcement, initiated removal proceedings in Masok's case. (*Id.* at 134-35.) In the Notice to Appear, the INS alleged that Masok had been convicted in Illinois for possession of a controlled substance, rendering him deportable under 8 U.S.C. § 1227(a)(2)(B)(i). (*Id.*) On August 4, 1998, the INS amended the Notice to Appear alleging that Masok had been convicted of an aggravated felony for drug trafficking under 8 U.S.C. § 1101(a)(43)(B), based on his Illinois and Georgia convictions. (*Id.* at 116-18.)

The Immigration Judge ("IJ") held removal proceedings on June 10, 1998, March 17, 1999, and August 10, 1999. (*Id.* at 064-96.) On August 10, 1999, the IJ concluded that the INS could deport Masok because he had convictions for controlled substance offenses and an aggravated felony in the aggregate based on the Illinois and Georgia convictions. (*Id.* at 056-061.) The IJ found that because Masok's convictions constituted an aggravated felony, he was ineligible for cancellation of removal. (*Id.* at 056, 061, 095.) Thus, the IJ terminated Masok's lawful permanent residency and ordered him removed from the United States to Israel. (*Id.*)

On September 3, 1999, Masok filed an appeal with the Board of Immigration Appeals

2

("BIA"). (*Id.* at 046.) On May 28, 2002, the BIA dismissed Masok's appeal, concluding that his Illinois felony conviction, on its own, constituted a "drug trafficking" conviction, and was thus an aggravated felony.[2] *See* 8 U.S.C. § 1101(a)(43)(B). The BIA based its decision on *In re Yanez-Garcia*, 12 I&N Dec. 390 (BIA 2002). (*Id.* at 005.)

Masok timely filed a petition for review of the BIA's dismissal to the United States Court of Appeals for the Seventh Circuit. The Seventh Circuit dismissed Masok's and another petitioner's (Yanez-Garcia) petitions for review because the court did not have jurisdiction over their claims. It then transferred Masok's case to the Court for consideration as a petition for habeas corpus relief under 28 U.S.C. § 2241. *Yanez-Garcia & Masok v. Ashcroft*, 388 F.3d 280, 284 (7th Cir. 2004). The Seventh Circuit has since summarized Masok's case:

> In *Yanez-Garcia*, we were asked to decide whether a state felony conviction arising from drug conduct punishable only as a misdemeanor under federal law can be deemed an "aggravated felony" for immigration purposes. Much like the present case, the two petitioners in *Yanez-Garcia* had pleaded guilty under Illinois law to simple possession of a small amount of cocaine, a Class 4 felony. But under federal law the same first-time, simple-possession offense would have been a misdemeanor. The INS charged both aliens as removable because of these convictions; the agency asserted, and the IJ and BIA agreed, that the convictions were controlled substance offenses and more specifically "drug trafficking crimes" and thus aggravated felonies. In determining whether drug convictions are "drug trafficking crimes" and thus aggravated felonies, the BIA applies the particular circuit's rule as to whether the state or federal characterization of the drug crime determines if it is a "drug trafficking crime." Where the question is still open, as it is in this circuit, the BIA applies the majority rule that the state-law characterization of the offense controls.

*Garcia v. Ashcroft*, 394 F.3d 487, 489-90 (7th Cir. 2005) (citations omitted).

---

[2] The BIA found that it was unclear from the record whether the Georgia conviction constituted a misdemeanor or felony under Georgia law, and thus, based its determination on Masok's Illinois conviction alone. *See* Certified Administrative Record, at 004 n.1.

## STANDARD OF REVIEW

Federal courts give deference to the BIA's interpretation of the statute it administers, the INA. *Ali v. Ashcroft,* 395 F.3d 722, 727 (7th Cir. 2005) (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). The definition of "drug trafficking crime" and "aggravated felony," however, involve the interpretation of the federal criminal laws, and thus the Court need not defer to the BIA's interpretation. *Id.*; *see also White v. Scibana,* 390 F.3d 997, 1000-01 (7th Cir. 2004) (*Chevron* deference not required where statutory interpretation does not implicate agency expertise).

## ANALYSIS

### I.    Background

Under the INA, an alien who has been convicted of a controlled substance violation is deportable under 8 U.S.C. § 1227(a)(2)(B). *See Yanez-Garcia,* 388 F.3d at 281. Section 1229b of the INA permits the Attorney General to cancel removal for a narrow class of people, including permanent residents who meet other criteria. *See id.* The Attorney General's discretion, however, does not apply to permanent residents who have been convicted of an aggravated felony. *See id.* (citing 8 U.S.C. § 1229b(a)(3)). The definition of "aggravated felony" includes "drug trafficking crime" which compromises "any felony punishable under the Controlled Substances Act." *Id.* (citing 18 U.S.C. § 924(c)(2)).

Under the CSA, a conviction for simple possession of a controlled substance punishable by a maximum of one year in prison is considered a misdemeanor. *See Garcia,* 394 F.3d at 490 (citing 21 U.S.C. § 844(a)). State laws classify drug offenses differently, however, and in Illinois the possession of less than 15 grams of cocaine is classified as a Class 4 felony. *See*

*Yanez-Garcia*, 388 F.3d at 282 (citing 720 ILCS 570/402(c)).

Prior to its decision in *In re Yanez-Garcia*, 12 I&N Dec. 390 (BIA 2002), the BIA interpreted the controlling statutes to mean that a state felony conviction for possession of a controlled substance did not constitute an aggravated felony for immigration purposes. *See In re K-V-D*, 22 I & N Dec. 1163, 1172-74 (BIA 1999); *In re L-G*, 21 I & N Dec. 89, 102 (BIA 1995); *In re Davis*, 20 I & N Dec. 536, 542 (BIA 1992); *In re Barrett*, 20 I & N Dec. 171, 178 n.4 (BIA 1990). Specifically, under the BIA's "'hypothetical federal felony' rule, a drug offense had to be punishable as a felony under federal law in order to be considered a drug trafficking offense under the INA." *Yanez-Garcia*, 388 F.3d at 282 (citations omitted). In the BIA's decision in *Yanez-Garcia*, however, "the BIA decided to abandon its blanket use of the 'hypothetical federal felony' test and to defer to the interpretation of 'drug trafficking crime' given by each regional circuit." *Id.* The Seventh Circuit has yet to decide whether a "drug trafficking crime" includes state felonies that are punishable as misdemeanors under federal law. *Id.* Other circuit courts are split concerning this issue, employing either the "sentencing guideline approach" or the "hypothetical felony approach" to make such a determination. *See id.* at 282-83; *see also Liao v. Rabbett*, 398 F.3d 389, 391-93 (6th Cir. 2005).[3]

---

[3] In *Liao v. Rabbett*, 398 F.3d 389 (6th Cir. 2005), the defendant's drug possession conviction was a fifth degree felony under Ohio law, but was punishable by a maximum term of only 12 months' imprisonment. *Id.* at 390. The Sixth Circuit did not take sides on whether the "guideline" or "hypothetical felony" approach applied. *Id.* at 393. Instead, the *Liao* court assumed that the "guideline" approach applied for purposes of defendant's appeal and concluded that the defendant's state drug conviction was not a felony under state law, even if it was labeled as such, because it was not punishable by a term of imprisonment of more than one year. *Id.* at 395. The court thus concluded that "whether analyzed under the 'guideline' or the 'hypothetical felony' approach, [the defendant's] drug conviction for possession of heroin was not a 'drug trafficking crime' as defined in 18 U.S.C. § 924(c)(2), and therefore does not qualify as an 'aggravated felony' under 8 USCA § 1101(a)(43)(B)." *Id.* at 395-96.

## II.    Circuit Court Precedent

### A.    Federal Sentencing Guideline Approach

The "guideline approach," also known as the "state-law felony test," developed in the context of United States Sentencing Guideline § 2L1.2. *See Yanez-Garcia,* 388 F.3d at 283; *see also Liao,* 398 F.3d at 392. Under Section 2L1.2, a court can enhance a defendant's offense level when the defendant has re-entered the United States after previously being removed for an aggravated felony. *See* U.S.S.G. § 2L1.2; *see also United States v. Hinojosa-Lopez,* 130 F.3d 691, 693 (5th Cir. 1997). The Application Note to Section 2L1.2 explicitly references the "aggravated felony" definition located in Section 1101(a)(43) of Title 8. In defining "aggravated felony," Section 1101(a)(43) includes "drug trafficking crime" as defined in the CSA. *See* 18 U.S.C. § 924(c). Based on these statutes, the "guideline" circuit courts have concluded that in the context of criminal sentencing, a state drug possession crime is an "aggravated felony" if it is both punishable under the CSA and considered a felony under state law, even if federal law only classified a simple possession conviction as a misdemeanor. *Yanez-Garcia,* 388 F.3d at 282; *see also Liao,* 398 F.3d at 392 (collecting cases).

The First Circuit provides a detailed analysis of the sentencing guideline approach in *United States v. Restrepo-Aguilar,* 74 F.3d 361 (1st Cir. 1996). In *Restrepo-Aguilar,* the First Circuit relied on the Application Note to U.S.S.G. § 2L1.2, recognizing that the definition of "aggravated felony" in the guideline included the language "whether in violation of federal or state law." *Id.* at 364. The court then turned to the language "drug trafficking crime" in Section 924(c)(2) and concluded that the "statutory definition plainly does not require that an offense, in order to be a drug trafficking crime, be subject to a particular magnitude of punishment if

6

prosecuted under the CSA." *Id.* at 364-65. The last piece of the "guideline approach" puzzle is the court's reliance on 21 U.S.C. § 802(13), which defines felony as "any Federal or State offense classified by applicable Federal or State law as a felony." *Id.* at 365.

After several other circuits adopted the *Restrepo-Aguilar* approach in the sentencing context, the BIA reviewed its interpretation of "aggravated felony" for immigration purposes. *See In re K-V-D*, 22 I & N Dec. 1163 (BIA 1999). Relying on the need for nationally uniform immigration laws, the BIA upheld its long-standing hypothetical felony approach by interpreting "aggravated felony" in the context of immigration law to include state drug offenses only if they are punishable as felonies under the federal drug laws or if the state offense includes a trafficking element. *Id.* at 1172-74; *see also Cazarez-Guiterrez v. Ashcroft*, 382 F.3d 905, 911-12 (9th Cir. 2004).

Nevertheless, in the context of an immigration case, the Fifth Circuit in *Hernandez-Avalos* relied on the sentencing guideline precedent and concluded that because the defendant's drug possession conviction was punishable under the CSA and was a class three felony under Colorado law, the state conviction was a "drug trafficking crime," and therefore an "aggravated felony" under the INA. *United States v. Hernandez-Avalos*, 251 F.3d 505, 508 (5th Cir. 2001). The Fifth Circuit articulated:

> [T]he statutory language is clear – and is the same -- whether applied in sentencing or immigration cases. We agree that the plain language of the statutes indicate[s] that Congress made a deliberate policy decision to include as an aggravated felony a drug crime that is a felony under state law but only a misdemeanor under the Controlled Substances Act, and that the lack of a uniform substantive test for determining which drug offenses qualify as aggravated felonies is the consequence of a deliberate policy choice by Congress that the BIA and the courts cannot disregard.

*Id.* at 510 (citations and quotations omitted). The Fifth Circuit then concluded that because the

petitioner's Colorado drug conviction was a "drug trafficking crime" and thus an "aggravated felony," the petitioner was ineligible for discretionary relief from removal. *Id.* at 508.

After the Fifth Circuit's decision in *Hernandez-Avalos,* the BIA overruled its decision in *In Re K-V-D* that upheld the "hypothetical felony approach" as discussed above. *See Yanez-Garcia,* 12 I & N Dec. 390 (BIA 2002). To date, the Fifth Circuit is the only circuit that has applied the sentencing guideline approach to immigration cases.

### B.    Hypothetical Felony Approach

In the context of immigration law, the Second, Third, and Ninth Circuit Courts have held that state felony convictions for possession of a controlled substance do not constitute "drug trafficking crimes" under Section 924(c)(2) and consequently are not "aggravated felonies" under Section 101(a)(43)(B) of the INA. *See Cazarez-Guiterrez v. Ashcroft,* 382 F.3d 905, 919 (9th Cir. 2004); *Gerbier v. Holmes,* 280 F.3d 297, 300 (3d Cir. 2002); *Aguirre v. INS,* 79 F.3d 315, 317-18 (2d Cir. 1996). Under this approach, a state drug conviction is a "drug trafficking crime" when federal law would punish it as a felony or if the crime contains a drug trafficking element. *See Cazarez-Guiterrez,* 382 F.3d at 912. Courts categorize these cases as the "hypothetical felony" approach because they find their origins in the BIA's pre-*Yanez-Garcia* decisions. *See Yanez-Garcia,* 388 F.3d at 282; *see also Liao,* 398 F.3d at 391.

The hypothetical felony approach is based "on an overriding presumption favoring the uniform application of immigration laws, absent plain indication that Congress intended to incorporate state variation." *Liao,* 398 F.3d at 391. Based on the premise that the power to regulate immigration is exclusively a federal power, the Ninth Circuit in *Cazarez-Guiterrez* reasoned that Congress designed the INA to implement a uniform federal immigration policy

without regard to the nuances of state law. *Id.* at 913 (citing *DeCanas v. Bica*, 424 U.S. 351, 354, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976)).[4] The *Cazarez-Guiterrez* court further explained that allowing for state law variances would result in divergent immigration consequences. *Id.* at 914. For instance, "an alien in one state might be ineligible for cancellation of removal even though he committed the same exact crime as an alien in a different state, simply because the two states punish the same crime differently." *See Gerbier*, 280 F.3d at 312. Accordingly, these circuit courts held that to achieve uniformity, the courts must interpret the definition of "aggravated felony" according to federal law. *See id.*; *see also Cazarez-Guiterrez*, 382 F.3d at 912-13.

The courts following the hypothetical felony approach also examined the legislative history of the term "aggravated felony" under Section 1101(a)(43) and "drug trafficking crime" under Section 924(c)(2) to support their conclusion that courts must interpret the definition of "aggravated felony" according to federal law. *See Liao*, 398 F.3d at 391-92. For example, the courts note that the definition of "aggravated felony" was amended in 1990, which, in effect, codified the BIA's holding in *In re Barrett*, 20 I & N. Dec. 171 (BIA 1990). *See Cazarez-Guiterrez*, 382 F.3d at 916; *Gerbier*, 280 F.3d at 305. In *Barrett*, the BIA concluded that "drug trafficking crimes" encompass state convictions for crimes analogous to offenses under the CSA. *See Barrett*, 20 I & N. Dec. 177-78. Accordingly, the *Barrett* holding supports the hypothetical felony rule "that state convictions are drug trafficking crimes for immigration purposes if they would be punishable as a felony under federal drug laws." *Cazarez-Guiterrez*, 382 F.3d at 916.

## III. Statutory Interpretation

---

[4] For an excellent discussion of the importance of uniformity in immigration laws, *see Gonzales-Gomez v. Achim*, R. 8-1, Memorandum, Opinion, and Order, Case No. 05 C 0189, at 18-22 (N.D.Ill. Apr. 11, 2005) (Aspen, J.).

The Court now turns to the definition of "drug trafficking crime" under Section 924(c)(2) to determine whether Masok's Illinois conviction for the possession of a controlled substance constitutes an "aggravated felony" for immigration purposes. The Court's first step in interpreting a statute is "to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). If the statutory language is clear and the statutory scheme is consistent, the Court's inquiry ceases. *Id.* "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341 (citing *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 477, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992)). If the statutory language is ambiguous, the Court must turn to the ordinary tools of statutory construction to discern Congress' intent. *See United States v. Gonzales,* 520 U.S. 1, 6, 117 S.Ct. 1032, 137 L.Ed.2d 132 (1997); *United States v. Silva,* 140 F.3d 1098, 1102 (7th Cir. 1998).

## A.     Statutory Language

Section 924(c)(2) provides: "For purposes of this subsection, the term 'drug trafficking crime' means any felony punishable under the Controlled Substances Act (21 U.S.C. 801 *et seq.*). . . ." Relying on the sentencing guideline cases, the Fifth Circuit in *Hernandez-Avalo*s concluded that this language is unambiguous. *See id.* at 510. The precedent upon which the Fifth Circuit relied, however, involved sentencing guideline cases where the courts relied upon 21 U.S.C. § 802(13) – which is not specifically referenced in Section 924(c)(2) – in making their determinations. *See, e.g., Restrepo-Aguilar,* 74 F.3d at 364. As the Third Circuit explained in *Gerbier,* Section "802(13) does not define any substantive offense under the Controlled

10

Substances Act. Rather, § 802(13) defines 'felony' for purposes of sentencing enhancements for the substantive crimes set forth in Chapter 21, but we are not defining 'felony' for purposes of sentencing enhancements. We are defining 'felony' for purposes of substantive drug crimes." *Id.* at 309 (citations omitted). As such, it appears that the Fifth Circuit's reliance on sentencing guideline precedent for immigration purposes is misplaced.[5]

In fact, Section 924(c)(2) does not specifically identify which section of the CSA should be used for defining "felony punishable under." In *Gerbier,* the Third Circuit reasoned that the substantive provisions of the CSA, namely, Section 3559(a) which provides the general sentencing classifications of offenses, should control. *Id.* at 310. Nevertheless, because Section 924(c)(2) does not reference the controlling provision of the CSA, the Court concludes that the statute is ambiguous because "drug trafficking crime" is not clearly defined by the language itself, the context in which that language is used, or in the context of the entire statute. *See Robinson,* 519 U.S. at 341; *see also Gerbier,* 280 F.3d at 309 ("Finding the phrase to be ambiguous, we must look to legislative history.") The Court thus turns to the statute's legislative history for guidance.


### B.   Legislative History


---

[5] In coming to its conclusion, the *Hernandez-Avalos* court did not address the differences between the immigration statutes and the sentencing guidelines "that might make the reasoning of the sentencing cases inapplicable in the immigration context." *Cazarez-Guiterrez v. Ashcroft,* 382 F.3d 905, 911 (9th Cir. 2004). The Ninth Circuit offered a distinction between these statutory schemes: "Because states are primarily responsible for criminal law enforcement, there is no pressing need for national uniformity in the sentencing enhancement context, and it is not surprising that the courts of appeals interpreting the Sentencing Guidelines have incorporated variations in state punishments for drug offenses." *Id.* at 914.

Both the Third and Ninth Circuits looked to Congress' 1988 amendment of Section 924(c)(2), which is the present language of this subsection. *See Cazarez-Guiterrez,* 382 F.3d at 915; *Gerbier,* 280 F.3d at 309. In 1988, Congress changed the statute's language from "any felony violation of Federal law involving the distribution, manufacture, or importation of any controlled substance" to "any felony punishable under the Controlled Substances Act." *Cazarez-Guiterrez,* 382 F.3d at 915; *Gerbier,* 280 F.3d at 308-09 (citation omitted). The legislative history indicates that the amendment was designed to clarify that "drug trafficking crimes" include "possession with intent to distribute, or attempt and conspiracy violations." *Cazarez-Guiterrez,* 382 F.3d at 915 (citing 134 Cong. Rec. S17360, S17363). On the other hand, "[t]here is nothing in the legislative history to suggest that Congress intended this 'clarification' to dramatically widen the scope of 'drug trafficking crime' to include, for example, simple drug possession punished as a felony by a state." *Id.* (citation omitted).

The Third and Ninth Circuits also examined the legislative history of the "aggravated felony" provisions of the INA, specifically Congress' amendments in 1988 and 1990. *Id.* at 915-16; *Gerbier,* 280 F.3d at 304-05. The Ninth Circuit noted that although the discussion of the 1988 amendment was sparse, Senator D'Amato, who was a proponent of the immigration provisions, described them as "focusing on a particularly dangerous class of 'aggravated alien felons,' that is, aliens convicted of murder, and drug and firearms trafficking." *Cazarez-Guiterrez,* 382 F.3d at 915-16 (quoting 134 Cong. Rec. S17301, S17318). The Ninth Circuit reasoned that this narrow list of serious crimes was intended to target international drug cartels, not minor state drug offenders. *See id.*

In 1990, Congress broadened the definition of aggravated felony to include "any illicit

12

trafficking in any controlled substance" in addition to drug trafficking crimes. *Id.* at 916.

Congress also added the provision that "aggravated felony includes offenses ... whether in

violation of Federal or State law...." *Id.* (quoting Pub. L. No. 101-649, 104 Stat. 4978 (1990)).

Relying on the House Judiciary Committee report, the Ninth Circuit concluded that the 1990

amendment codified the BIA's decision in *Barrett. Id.* In *Barrett,* the BIA concluded that "drug

trafficking crime" encompasses state convictions for crimes analogous to offenses under the

CSA. *See Barrett,* 20 I & N. Dec. 177-78. Simply put, the *Barrett* decision adopted the Third

Circuit's hypothetical federal felony approach. *Cazarez-Guiterrez,* 382 F.3d at 916; *Gerbier,*

280 F.3d at 304.

Finally, the Ninth Circuit observed that although Congress has expanded crimes defined

as "aggravated felonies" for immigration purposes since 1990, it has never altered the definition

of "drug trafficking crime" even though Congress overhauled the INA by enacting the

Antiterrorism and Effective Death Penalty Act of 1996 and Illegal Immigration Reform and

Immigrant Responsibility Act of 1996. *Id.* at 916-17. The *Cazarez-Gutierrez* court concluded:

> Nonetheless, Congress did not amend the definition of drug trafficking crime or
> the BIA's longstanding, nationally uniform interpretation of that provision.
> Congress is presumed to be aware of an administrative interpretation of a statute
> and to adopt that interpretation when it reenacts a statute without changing the
> interpretation.

*Id.* at 917 (*citing Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978)).

In summary, the legislative history reveals that in its last amendment to Section

924(c)(2), Congress intended to include certain federal attempt and conspiracy crimes, not state

felony crimes. The legislative history of the INA's aggravated felony provisions indicates that

Congress intended to target international drug cartels, not minor state drug offenders. In

13

addition, Congress approved the BIA's hypothetical felony approach in *Barrett* and has not changed its approval of *Barrett* despite amending the immigration laws on numerous occasions.

This legislative history supports the Court's conclusion that Congress did not intend to incorporate state variations into the definitions of "drug trafficking crime" and "aggravated felony" for immigration purposes, especially in light of the policy considerations of maintaining nationally uniform immigration laws and equity. The Seventh Circuit also favors the uniform application of federal immigration laws. *United States v. Martinez-Garcia,* 268 F.3d 460, 465 (7th Cir. 2001) ("uniform application of federal law requires that we identify and apply the 'generic' elements of the felonious activity involved, rather than the inconsistent titles, elements and definitions used in the statutes of the various states"). Given the legislative history and the importance of the uniform application of the immigration laws, the Court adopts the hypothetical felony approach and applies it to the case at hand. *See also Gonzales-Gomez v. Achim,* Case No. 05 C 0189 (N.D.Ill. Apr. 11, 2005) (Aspen, J.); *Agate v. Department of Homeland Security,* Case No. 05 C 1142 (N.D.Ill. Apr. 11, 2005) (Bucklo, J).

Because Masok's Illinois conviction for possession of a controlled substance, less than 15 grams of cocaine, in violation of 720 ILCS 570/402(c), would not be punishable as a felony under federal law and does not contain a trafficking element, it is not does not constitute a "drug trafficking crime" under Section 924(c)(2). Consequently, Masok's Illinois conviction is not an "aggravated felony" under Section 1101(a)(43)(B), and thus Masok is eligible for discretionary relief from removal under 8 U.S.C. § 1229b(A). Accordingly, the Court grants Masok's petition for habeas corpus pursuant to 28 U.S.C. § 2241.

## CONCLUSION

For these reasons, the Court grants Masok's petition for habeas corpus and remands this matter to the Immigration Judge so that Masok may apply for discretionary relief from removal under 8 U.S.C. § 1229b(A).

Dated: April 28, 2005

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**